Yes, Your Honor. My name is Richard Berry, and may it please the Court, I am the petitioner in this matter. This is basically a case over a due process. This case comes to this Court from the Bankruptcy Appellate Panel, which found in part some sanctions that had been voted at the trial level were inappropriate and set those aside. It did so, I believe, on a basic due process basis, but also on a statutory basis. To jump ahead a little bit and get to the bottom line on this thing, it's my position that we shouldn't have grades of due process. There's due process and there's due process. What particular aspect of due process was not accorded you, Mr. Berry? In this case, everyone agrees that it was probably, well, overtly February, about a week before the hearing, I found out about this. The trustee, of course, argues the contrary. It's not quite so, Mr. Berry. In your motion for leave to continue the hearing in February, you said that you had learned through a telephone call before Thanksgiving of the pendency of the proceedings. That's correct. Isn't that correct? So what you just told us now was inaccurate. Not quite, Your Honor, if I may elaborate on that. The phone call on Thanksgiving was from the U.S. trustee's office, and there was no identification of the case, no name given. There was no way I could have looked it up. What was your knowledge? Let me take a look if I can find your notice of motion for continuance. What did you know about the proceedings? Mr. Cuellar, the U.S. trustee's office, called my office and said he had another person whose name escapes me right now in his office, who in turn had consulted us about bankruptcy. And suffice to say that Pat... Us, us, you mean you. Well, me and the company I work for. All right. He said that did I know there was a proceeding pending. He didn't use the word cessation. There was no case number. And if I might add, Your Honor, that this is no one disagrees with. When you learned that there was a proceeding pending, did you inquire further as to the nature of the proceeding which Mr. Cuellar referred? I asked him to send me the documents, and he said he would, and I gave him an address. He never did. And the trustee's office agrees with this. What address did you give him, Mr. Berry? Post office box, which I've had for 100 years. All right. And the trustee's office agrees with this. They agree that they never followed up with the post office box mailing, and Mr. Cuellar has never disagreed with my characterization of this conference, which, by the way, I followed with a letter in February when I found out, via the subpoena that had later been served on the landlord of the place, what the name of the case was and what the number was. And that letter appears, I believe, at page 164 in my abstract. But that letter was attached to the motion. So what your claim is is that you did not receive notice consistent with your process. Is that correct? Correct, until about the first February. And that's your only claim? Well, two claims. I did not receive notice until approximately a week ahead of the hearing, 10 days, when I traced it down via subpoena. The second aspect of that is that that known, the trial judge should have at least prepared. My fatal error was I should have gone down there on the day of the hearing, even though it was like eight, nine days away, and urged in person the motion to continue, which I did not do. That's a mistake on my behalf. So you knew, let's get the facts straight as far as we can today, right? Okay. You say that you knew about the proceeding at which the order to show cause of the hearing. True? Correct. I found it out via subpoena that it served on a landlord. Secondly, knowing that there was an order to show cause in re-contempt, rather than go to the hearing, you absented yourself, right? I filed a motion to continue, correct. You filed a motion to continue. Did you determine on or before the day of the hearing that the motion to continue had been granted or had not been granted? It had never been ruled on, and I did not know that. Why did you not know that? Judge Baum turned out he ruled on that the day of the hearing. In other words, he convened the hearing. So you knew eight days out, seven days out, six days out, et cetera, that your motion had not been ruled on. That is true. So you had not been granted the reliefs that you wished. That would be true. And you didn't go to the hearing to determine whether the judge would grant the motion to continue. I indicated I decided I should have gone. Were there any reasons, I mean, whether it was illness or imprisonment or any reasons why you didn't go to the hearing? No, there is no. I have no. All right. Then your position on second position is a trial judge committed an abuse of discretion in not granting your motion. Correct. Was the motion opposed by the other side? Not that I know of. All right. Did you have any conversations with the other parties as to whether they did not oppose the motion for continuance? None. Okay. So how did he abuse his discretion? Given what was asked in the petition as joined in by the other Chapter 13 trustee amendments. Do you have any cases that say that a motion to continue, if denied, is an abuse of discretion? Not per se. It's addressed to the courts. Not per se or not per at all. Well, obviously, it's addressed to the trial court's discretion. But given the gravity. If it's obviously his discretion, why did he abuse it? Why is it? Given the gravity of what was in the petition. It's your assertion that he abused it. You have no authority to back your assertion. You have no facts to back your assertion. And you have no consent from the opposing parties. Other than just general law in the brief, that's correct. Let's get on to the other points that you may have to argue. Well, some of the points that I did want to make are as follows. I think that the BAP panel mischaracterized what this proceeding was. This should have been and was an adversarial proceeding. The BAP panel discussed this as well. This was a motion, so therefore, there's a more relaxed service requirement, the mailing. And by the way, there's an implication in the panel that because the record is silent  but actually that's a little misreading, a little bit of a misreading. Let me ask you this. And you may want to answer it and you may not want to answer it. In this proceeding that we're talking about, 10-60039, were you preparing bankruptcy schedules and petitions for bankruptcy? Not as had been sanctioned by Judge Baum. No. No. All right. You deny that you were engaged in the preparation of petitions at the time that you received the order to show cause. Correct. All right. I might add there's some disagreement with what's in Judge Baum's order. We were selling kits. There is some disagreement. That's put charitably. We were selling bankruptcy kits. The trustee's office thinks that's in the order. It's not. There was an issue there. Oh, you were selling bankruptcy kits, but that was not providing services to petitioners. Correct. That's not in his order. The trustee's office thinks that it is, and there's some argument about that. But other than that. Do you want to save a minute for a rebuttal? Thank you. I will. Yes. I really try to understand what makes you go on. You're not engaged in the practice of war. Is that correct? Correct. And you've been told you should not engage in preparing bankruptcy petitions, correct? Correct. And you say you live on your Social Security. Is that your main source of income? Yes. So why do you do this thing that seems to get in really in a lot of people's way? Why do you keep on this course? This company does a lot of work for other lawyers. That's primarily what we do. There are licensed preparers that office there. I say licensed preparers. I'm going to go to the State Supreme Court. There are licensed preparers that office there when something falls. Like, for example, there's a divorce person there who uses that facility. But I'm trying to understand why you were involved in this at all when you were rather firmly advised not to be involved. I wasn't. And that's when Cuellar called me, the trustee's office called me that Thanksgiving. That was the surprise of that phone call because I had no idea what he was talking about. Suffice the statement, my name comes up in the bankruptcy court in Arizona, blood pressures tend to soar, both in terms of perhaps the bench and also the trustee's office. And that was Cuellar's phone call. Had he identified that proceeding, I could have run it down and found it, and he never did. In the final analysis, you got notice to show cause and you ignored it, right? Filed a motion to continue it. But other than that, yes. I'm sorry? I filed a motion to continue it so that I could repair, but this wasn't granted. No ruling at all. Which means it wasn't granted, correct? Okay. Thank you very much.   Good morning, Your Honor. Scott Lieske, appearing on behalf of the Appellees and Chapter 13 Trustees, Russell Brown and Edward Maney. Your Honor, the appellant's primary argument that he has not been delivered. Mr. Lieske, let me ask you a direct question. What relief do you wish? Simply that the bankruptcy appellate's panel's opinion be affirmed, Your Honor. We feel that their opinion. What effect will that have on Mr. Barry? It will sustain the various fines that were imposed by Judge Baum pursuant to 110. But not the $100,000 fine. Correct. There were a number of fines that were imposed. So what fines would he have to pay? Well, I'll go over those with you. There were violations of 110b1 and c1. Give me the sums. Oh, okay. Well, basically, Judge Baum found a number of violations. 110 allows up to $500 per violation. Judge Baum found the maximum $500 fine for each of the violations that he found for a total of $117. I can't quite get my mind around a fine which says pay up to $500. Is that a $1 fine or is it a $500 fine? Well, I suppose that the ---- No. What did the bankruptcy appellate panel say Barry should pay in dollars? They affirmed Judge Baum's judgment, which said $117,000 fine for the various violations of 110. That amount was trebled pursuant to 110L2D to $351,000. There was also damages paid ---- But the $100,000 fine was vacated, right? There was a separate $100,000 ---- Oh, there was a separate $100,000. There was a separate $100,000 sanction penalty pursuant to 526C5B. That particular sanction, the BAP said, could only have been brought ---- The statute says that that particular sanction has to be brought by either the United States trustee or the court itself. On a motion. On a motion. No motion was made. Well, our office, the Chapter 13 trustee, asked for relief pursuant to 526C5B. The Chapter 13 trustee's office is separate and distinct from the United States trustee's office. So the BAP made that distinction, saying that the Chapter 13 trustee ---- It says on its own motion, that's the court's motion, having given notice, or on the motion of the United States trustee, that's not the person who made the motion. That's not us. Or the debtor. The debtor didn't make the motion. Right. So what's wrong with knocking out that $100,000? Nothing, Your Honor. Okay. Let's stop talking and take any time on that. So what you're saying is that if the BAP fines are affirmed, us affirming the judgment, Mr. Berry will be liable for $117,000 trebled to $351,000.  Will that satisfy you? Excuse me? Will that satisfy your desires as a Respondent in this case? I think so, Your Honor. There were also some ---- You don't want any further sanctions, such as putting Mr. Berry in jail for a while? We did not ask for that, Your Honor. The motion that was filed, the application for order to show cause, that was filed by Mr. Maney, and then Mr. Brown filed a separate application joining Mr. Maney's action. Neither of those motions asked for Mr. Berry to be put in jail. It did ask that the Court make a referral to the United States Attorney's Office. For what purpose? To review the case and determine if any action needed to be taken by the United States Attorney's Office. But that in itself isn't a criminal matter. We have not brought any criminal sanctions before the Court. We're not asking for any criminal penalties before the Court. There were also ---- It's asking for an affirmance that it will result in a $351,000 fine, and that's it. Well, and there were also some damages also awarded. There were damages awarded to the debtors in nine cases of $2,000 apiece, and then there were also some damages awarded to the Chapter 13 trustees of $1,000 per case in the nine cases that were ---- that Judge Bond took testimony on. Mr. Berry tells us that he's living on Social Security. That's correct. Well, that's not quite correct, Your Honor. Would you like him to join as a petitioner in bankruptcy also? Well, we'd like him to stop abusing the bankruptcy system, at which he continues to refuse to do. And I take issue with the fact that he only lives on Social Security, Your Honor. The direct testimony of the witnesses in the case indicated that they paid him for the services that he provided. Oh, so you think there's some money there somewhere. Mr. Berry is definitely getting paid for the work he's doing as a bankruptcy document preparer in violation of 110. So we've got the $117,000 fine, damages of $2,000 apiece in nine cases. I compute that at $18,000. Anything else? And then damages to the United ---- or to the Chapter 13 trustees of $1,000 per case in those same nine cases. So an additional $9,000 in damages. Okay. So that's a total of 478. I trust your math, Your Honor. I ---- All right. Now, how do you meet ---- I suppose there's an argument here by Mr. Berry that the notice of order to show cause and wreak contempt was not regularly served upon him in accordance with due process requirements. Well, Your Honor, quite frankly, he's ignoring the bankruptcy rules. He seems to think that in an adversary process he's entitled to some sort of personal service. Bankruptcy Rule 9014b says that in contested matters, the motion shall be served in the same manner as a summons and complaint by Rule 7014. But I have a problem with that, counsel. Yes. And it's this. Service of process, whether by summons and complaint or by notification after a party has arrived and made his presence known in a lawsuit, appeared in a lawsuit, is one thing. I mean, the most you can lose there is money. But when it's an order to show cause, since it can be a finding of contempt and the penalties can be jail, at least from my recollection of California practice, the order to show cause had to be personally served because it had the sequel of jail time. Isn't that a concept rooted in due process? And the bankruptcy rules are very clear, Your Honor. Rule 7004b. Bankruptcy rules arise as a matter of Federal legislation under something called the Constitution of the United States. Right. And there are two elements here, Your Honor. There's whether or not he received a notice required by the bankruptcy rules and whether or not he received proper due process as required by the Constitution. That's what I want to talk about. Well, Your Honor, the United States Supreme Court in its Mullane v. Central Hanover Bank decision says that the fundamental requisite of due process is the opportunity to be heard. Mr. Berry has been provided that opportunity. He had actual notice of the proceedings. Now, he claims that he didn't get notice until November, maybe February, but he ignores the fact that these documents were mailed to him at his business address and at his home well in advance of November as allowed by the bankruptcy rules. Bankruptcy rule 7004b says that service may be made, and this is in an adversary matter, which 9014 commutes over as far as contested matters as well, but service may be made by first-class mail to a dwelling house or the place where the individual regularly conducts a business or a profession. Now, I think it's fair to define that the due process clause requires personal service if the sequel of the process is that a person goes to jail, right? Your position is that he had actual notice. He confessed as much nine days before the hearing. I think, Your Honor, that this Court's Espinoza decision addresses that. It says that actual notice of the proceedings satisfies the due process requirements. Okay. So I think this Court has already previously addressed that issue and ruled on it, that Espinoza's decision says that because due process does not require actual notice, it follows a fortiori that actual notice therefore satisfies due process. All right. I think we've heard your position. Thank you very much. You have about a minute left on rebuttal. Is there anything you'd like to bring to our attention? Yes. Just three points real fast. The Espinoza case, I don't think, means you get nine days' notice and that satisfies due process. Secondly, the mail business, the back panel pointed out that there was a mailing done by the trustee's office to a third address someplace in Pine, Arizona, 100 miles from Phoenix, and then they remailed that. That would be a mailing that was done on November 5th, and then they remailed that same process like Christmastime. So it's kind of the record in the back panel, the decision is vague, and I looked and I couldn't find it, so I don't know where they got that, but that would tell me that something did come back and that they knew they had a notice issue. And thirdly, drawing upon this Court's question early on in Mr. Leiske's presentation, I think this was an adversarial proceeding. You can call it whatever you want, but given what they were doing here, they were bringing a new party into this case, there was new issues, they were going off on this tangent about sanctions. I think that requires an adversarial proceeding with a full-blown opportunity to be served, do discovery, take depositions and that sort of stuff. That just wasn't afforded here. Thank you. The case of Inres Sustaida, Perrin Barry, close Perrin, is submitted and the Court thanks counsel for their arguments. Thank you very much.
judges: Walter, Noonan, Bea